In the Matter of MURRAY M. BRODSKY, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, July 5, 1944.

*Einar Chrystie* for petitioner.

*Joseph L. Greenberg* for respondent.

*Per Curiam.* Three charges of professional misconduct are set forth in the petition, stating that the respondent had converted the funds of clients. On the hearings before an Official Referee the petitioner presented evidence which established the several charges.

The respondent testified in his behalf, admitted the charges and, in mitigation, gave a detailed statement of his poor financial condition, due in part to illness in his family at the time of his wrongdoing. At the close of the hearing, the Official Referee said: " * * * the charges have all been sustained as alleged in the petition; * * * the respondent has fully and frankly admitted the charges and has concealed nothing; has stated his excuse and has stated the mitigating circumstances, which I shall present to the Court in my report."

The petitioner has moved to confirm the report of the Referee. In a " Memorandum on behalf of the Respondent ", the latter has stated that he " fully realizes the error of the past " and throws himself on the mercy of the court.

The first charge arises from the fact that on March 8, 1940, the respondent completed the collection of $153 in settlement of an action brought to recover property damages on behalf of a client named Nicholas Monteaperto. The respondent did not notify his client of the collection of that money and did not pay any part thereof to him. Mr. Monteaperto, through an inquiry made of the defendant's attorney, learned that the money had

been collected by the respondent, and he demanded his share. On April 18, 1940, the respondent gave his check to Mr. Monteaperto for $70.50 representing the amount due the latter. That check was returned unpaid by the bank on which it was drawn because there were insufficient funds to the credit of the respondent. Thereafter, and on April 28, 1940, the respondent paid Mr. Monteaperto the amount to which he was entitled.

The second charge relates to the conduct of the respondent concerning the sale of a candy store by a client, one Mrs. Hanna Newman, also known as Mrs. H. Gertman. At the time of the closing, January 2, 1940, the sum of $851.62 was intrusted to the respondent, to be held in escrow for the purpose of paying the creditors of Mrs. Newman. These trust funds were commingled with personal funds of the respondent. The respondent then failed to pay some of the creditors until after he was notified that the matter was under investigation by the Grievance Committee of the Association of the Bar of the City of New York. In the meantime the respondent had converted to his own use the sum of $438.92 of the moneys which he was to hold in escrow. He eventually paid all the claims and accounted in full for the entire sum.

The third charge relates to the conduct of the respondent in accepting $90 from a client named Mrs. Elizabeth Greenhalgh and converting it to his own use instead of settling an action then pending against her. Because of his failure to pay the money, a judgment in the sum of $91.10 was obtained against Mrs. Greenhalgh. Thereafter, the respondent falsely represented to Mrs. Greenhalgh that he had paid the money into court to settle the judgment upon the return of execution unsatisfied. He also made other false representations to his client and to the petitioner's Committee on Grievances in an effort to shield himself.

Although the respondent has admitted the foregoing charges, he asserts that he has paid in full the claims of all his clients and that no person now has a claim or complaint against him. In attempted mitigation, he testified that at the time of the occurrences involved in the first and second charges his finances were low, and he had to support his parents, as well as his wife and child. In addition, his mother, father and son were ill and his wife was pregnant. Two years later, when the events occurred which are the basis of the third charge, his finances were still in poor condition.

The evidence in the record reveals that complaint was made to the petitioner in the *Monteaperto* case on April 24, 1940. The

respondent called at the office of the attorney for the petitioner's Grievance Committee on May 1, 1940. He explained his financial condition and family troubles and was told to write a letter of explanation of his conduct. Such a letter, dated June 17, 1940, contained the following: " I realize that my conduct in using Mr. Monteaperto's money for about six weeks was a clear violation of ethics on my part. I never did anything like that before, and I cannot conceive of myself doing anything like that knowingly, again. I have at all times conducted my law practice and my outside conduct in an upright and honorable manner."

As a result of such a display of contrition and in view of the payment of the sums due his client, the petitioner took no further action on this complaint. Shortly thereafter, and on July 16, 1940, a complaint was made in the Newman matter. Letters dated July 22, 1940, and August 5, 1940, were sent to the respondent but were not answered by him. In reply to a third letter dated August 14, 1940, the respondent stated that he would submit " the written explanation of this matter to you on or before the 28th day of August, 1940 ". No letter of explanation was received and the respondent was notified that the Committee on Grievances would conduct a hearing on October 18, 1940. Thereafter and on November 8, 1940, the chairman of the Grievance Committee stated that he was convinced that at the time respondent wrote the letter quoted above, dated June 17, 1940, he had made a " technical conversion, at least " in the Newman matter of $38.92. The chairman then said: " The Committee is inclined not to recommend that you be prosecuted on this charge, but I think all of us have some hesitancy, because of the fact that you make this definite statement in the letter that while you admit a conversion of Monteaperto's money, which later was made good, of course, you said you had never done anything like that before and you couldn't conceive of yourself doing anything like it again. As I say, at that very time you wrote that letter, you had technically converted over $400 in this Bayuk matter. Now, that does not make a very strong appeal to us, in this almost a practice of yours of letting your bank account get so low, with trust moneys, that you use other people's moneys for your own purposes, and then may get out of it by restoring the money. That situation is not one which appeals to us at all, and it is one you had better stop, because what I am going to do with this charge is file it and if you are ever up again for any cause, any reasonable cause at least, I am going to revive

this charge against you and recommend to the Appellate Division that you be prosecuted on it.''

The Committee then filed the charges '' subject to being brought up again, if you are ever up before us again on any charge that has merit in it.''

The third complaint, relating to the Greenhalgh matter, was made on July 8, 1942, and the respondent notified to appear in connection therewith. He called on July 10, 1942, and was interviewed by an assistant to the attorney for the petitioner's Grievance Committee. The respondent admitted the receipt of $90 to settle the case and of $20 for his fee in connection therewith. He claimed that the creditor had refused to accept $90 because the judgment was a little more than that sum. He further stated that he had requested Mrs. Greenhalgh to pay the small additional amount but she had refused to do so. He further stated that the $90 was then in his own office. When the assistant attorney then interviewing him showed a willingness to accompany respondent to his office for the money, the latter admitted the money was not in the office. The respondent then asked that a letter setting forth the charges in full be mailed him. This was done that same day. In the letter the respondent was asked to submit his written explanation. Other letters dated July 17, 1942, and July 28, 1942, were sent to the respondent. On August 3, 1942, the respondent wrote '' I will prepare my answer in duplicate and will have same in your hands no later than August 7, 1942 ''. As no letter was received, the matter was set down for hearing on September 25, 1942. Several adjournments were granted and a hearing was held on November 9, 1942. *After the hearing* the respondent paid his client the sum of $90, which had been converted by the respondent. These charges were then presented.

The respondent should be suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MARTIN, P. J. (dissenting). In less than three years the respondent converted to his own use moneys of three clients. He was fortunate that the petitioner did not press the first charge. When the second matter was brought to its attention, the Grievance Committee displayed great consideration for the respondent in deciding not to prosecute at that time. Such action was taken, however, with '' some hesitation ''. When the third charge was made, the respondent did not admit his guilt

but attempted to interpose a false defense when questioned by the petitioner's assistant attorney.

In the past the respondent has been accorded very lenient treatment. He has proved, however, that he is unworthy of the consideration shown him. It is evident from the record that he is unfit to remain a member of the legal profession.

The respondent should be disbarred.

TOWNLEY, GLENNON, DORE and COHN, JJ., concur in *Per Curiam* opinion; MARTIN, P. J., dissents in opinion and votes for disbarment.

Respondent suspended for two years.